## THE CITY OF ELGIN

### *v.*

### ROBERT BECKWITH *et al.*

*Filed at Ottawa January 25, 1887.*

1. BOUNDARIES—ACCRETIONS—*of the rule for extending lines to take in an accretion.* As a general rule, where new land is formed on a river bank by a change in the river, the riparian proprietor's lands will be extended by lines drawn at right angles with the middle thread of so much of the river as lies opposite the shore line, rather than at right angles with the shore line. But this rule, under special circumstances, is subject to modification.

2. SAME—*of evidence in reference to boundaries, in connection with the question of accretions.* A town was laid out on the east bank of a river, the plat showing a street extending due east and west, sixty-six feet wide, up to the river, which ran in a south-easterly course, and a lot bounded on the west by the river, and on the south by the north line of the street. After the location of the town, the river receded some seventy feet to the west, leaving an accretion. The lot owner claimed all of the accretion north of a line from his south-west corner, extending to the river at a right angle to its general course, while the city claimed all of it south of an extension of the north line of the street to the river, and also a part of the accretion south of the south line of the street extended in like manner, thus making the street one hundred feet wide at the river bank. It appeared that the travel on the street over such accretion had been deflected to the south as it approached the river, to reach a bridge over the same. In ejectment, by the owner of the lot, to recover the accretion claimed by him, the city, which was the defendant, offered in evidence a deed for land south of the street, as extended due west, which the court refused to admit: *Held*, that the court erred in excluding the same, as it afforded a reasonable explanation why the street was wider at the river.

3. In a case where it becomes material to show the north line of a public street over land formed by accretions since it was first laid out, as, whether in the same direction as the balance of the street, or whether at a right angle with the center thread of a river from which the accretion was formed, any evidence tending to show its true line, is proper; and it is error to exclude from the jury declarations of the plaintiff's grantors, made when in possession of the land owned by the plaintiff, as to the location, and as to what was the true north line of the street.

4. On the trial of an action of ejectment, for a strip of land formed by accretion to the former bank of a river, involving the question whether such strip was an accretion to a public street or to a lot of the plaintiff, whose deeds

referred to a plat of a subdivision of a lot made by an assessor, which included the plaintiff's, and to which some of his witnesses referred, the defendant offered in evidence the assessor's plat of such subdivision, which the court excluded: *Held*, that the court erred in refusing to admit the same in evidence.

5. EVIDENCE—*declarations of one in possession of land, as to boundary lines.* Declarations in disparagement of the title of the declarant in possession of lands are admissible as original evidence. So when the boundary line of a lot is in dispute, and depends upon the true line of a street, the declarations of a former owner while in possession of the lot, as to the location of the line of the street, are admissible in evidence against one claiming under him.

6. DEDICATION—*for street by plat, over a river.* Where the plat of a city bordering upon a river shows a street to the bank of the river, with lines marked "bridge," that is evidence that the party making such plat intended to dedicate the land for a street to the center of the stream, or at least so far as he could dedicate a highway. The dedication of land to public use, by plat or otherwise, is a matter of intention.

7. LAW AND FACT—*line of a street—question of fact.* What is the line of a street over ground formed by accretions, after the laying out and platting of the street, is purely a question of fact; and to state in an instruction, as a matter of law, what is such line, when it forms a boundary of land which is in dispute, is error.

8. INSTRUCTION—*assuming to settle a question of fact.* An instruction which assumes to state, as a matter of law, what line is the north line of a street in a case where such line is a vital and disputed question, is erroneous, as being equivalent to a withdrawal of such question from the jury.

9. SAME—*ignoring matters in defence.* In an action of ejectment, an instruction virtually deciding the case for the plaintiff on a hypothesis which ignores certain matters tending to show a defence, is erroneous.

APPEAL from the City Court of Elgin ; the Hon. A. H. BARRY, Judge, presiding.

Mr. F. W. JOSLYN, and Messrs. SHERWOOD & JONES, for the appellant :

The declarations of. the grantor of appellees, concerning the boundaries of the land, and the extent of his possession, are competent evidence as part of the *res gestæ*, and especially so when the declarant is dead. Greenleaf on Evidence, sec. 109 ; Phillips on Evidence, (4th ed.) 311, 314 ; 2 Smith's Leading Cases, 390 ; *Van Deusen* v. *Turner*, 12 Pick. 522 ;

*Bower* v. *Earl,* 18 Mich. 376; *Treat* v. *Strickland,* 23 Maine, 234; *Kinney* v. *Farnsworth,* 17 Conn. 355; *Nixon* v. *Porter,* 34 Miss. 697; *Morton* v. *Folger,* 15 Cal. 275; *Melvin* v. *Marshall,* 22 N. H. 379; *Stroud* v. *Springfield,* 28 Texas, 649.

Where a public right is involved, as in this case, where the question to be determined is the location and boundary of a highway, it is competent to show, by persons acquainted with the facts and with the reputed boundary lines of a public highway, where, by common reputation, a given boundary of a street is. Greenleaf on Evidence, secs. 127, 145, and note; Phillips on Evidence, (4th Am. ed.) p. 219, note 87; *Boardman* v. *Reed,* 6 Pet. 341.

Reputation is of more weight than experimental surveys. 3 Rand, (Va.) 44.

The court erred in rejecting proof of the deed to the city for the ground on the south of the street. This rejection was, in effect, telling the jury that the city, under no circumstances, was entitled to a street more than sixty-six feet wide, even though it bought and paid for it.

As the owners of this property used the assessor's plat to determine the boundaries of this very land, it was admissible in evidence. *Bowen* v. *Earl, supra; Harmer's Heirs* v. *Morris,* 1 McLean, 44; *Lunt* v. *Holland,* 14 Mass. 149; *Davis* v. *Rainsford,* 17 id. 207; *Jones* v. *Johnston,* 18 How. 150.

The city owns the piece of land in controversy by dedication, and by user for the last forty-two years, exercising control over the same, and claiming title to the same as against the world; and this claim has been acquiesced in by all the owners of the land called for by the appellees' deed. Acquiescence in boundaries determines the rights of parties. *Yates* v. *Shaw,* 63 Ill. 368; *Thomas* v. *Saytes,* 24 id. 363; *Kerr* v. *Hitt,* 75 id. 50; *McCormick* v. *Barnum,* 10 Wend. 104.

The instructions took away from the jury every fact in the case, and in substance directed a verdict for the plaintiff. This was error. *Railroad Co.* v. *Rector,* 104 Ill. 296; *High-*

*way Comrs.* v. *Highway Comrs.* 60 id. 58; *Ogden* v. *Kirby,* 79 id. 555; *McCartney* v. *McMullen,* 38 id. 237; *Grube* v. *Nichols,* 36 id. 92.

Mr. R. N. BOTSFORD, and Mr. A. B. COON, for the appellees:

By the dedication, the public, in respect to the street, became entitled to the same riparian rights as a lot owner whose lot was bounded on the river. Accretions, in such case, would be apportioned to the street and the adjoining lot owners, on the same basis as between individual owners. This rule of apportionment would give the fee of this disputed piece of land to the appellees. *Kehr* v. *Snyder,* 114 Ill. 313.

We refer to the following authorities as applicable to all cases in dividing accretions : *Valentine* v. *Piper,* 22 Pick. 85 ; *Gray* v. *Deluce,* 5 Cush. 9 ; *Knight* v. *Wilder,* 2 id. 199 ; *Sparhawk* v. *Bullard,* 1 Metc. 95 ; Gould on Waters, sec. 162 ; Angell on Water-courses, 222.

In construing grants or locating boundary lines, courses and distances must yield to monuments. *Williams* v. *Warren,* 21 Ill. 541 ; *Miller* v. *Beeler,* 23 id. 163 ; *Kamphouse* v. *Gaffner,* 73 id. 453 ; *Hadden* v. *Shoutz,* 15 id. 581 ; *Lyman* v. *Gedney,* 114 id. 388 ; *Kruse* v. *Wilson,* 79 id. 233.

Acceptance of any proposed dedication is wanting, and non-user and abandonment, if necessary, can be successfully urged against the claim. *Littler* v. *Lincoln,* 106 Ill. 353 ; *Winnetka* v. *Prouty,* 107 id. 218.

If the public acquires a new route for a street or road, this will amount to an abandonment of the former way. *Grube* v. *Nichols,* 36 Ill. 92 ; *Champlin* v. *Morgan,* 20 id. 181 ; *Peoria* v. *Johnston,* 56 id. 45.

If the city purchased any lands, it was those accretions formed west of the platted street, and was a part of the street before its purchase. The deed was therefore properly rejected.

The assessor's plat offered in evidence was not certified as the law required, and there was no preliminary proof that

the owners of lot 6 had refused to plat the same, or that the assessor had required one made, or had directed the county surveyor to make one. Such plat was not binding on the lot owners unless assented to by them.

The offer to prove the declarations made by Root and Dexter was rightfully rejected,—first, because the testimony was too loose, vague and indefinite to apply the declarations to the land; second, because there is no question of lost boundaries or disputed lines; and third, because these declarations, if competent, are *estoppels in pais,* and inadmissible in ejectment. *Mills* v. *Graves,* 38 Ill. 455; *Stock Yards* v. *Ferry Co.* 102 id. 514; *Winslow* v. *Cooper,* 104 id. 235.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought in ejectment, by Robert Beckwith and Harriet Dickenson, against the city of Elgin. The premises described in the declaration is a piece of ground lying at or near the intersection of Chicago street and Fox river. It is claimed, the premises described are a part of lot 6, in block 20, of Gifford's plat of Elgin, with the accretions thereto. Defendant filed the general issue, and a special plea disclaiming all interest in the land described in plaintiffs' declaration, lying north of the north line of Chicago street, as laid on what is styled the assessor's subdivision of lot 6, in block 20, of Gifford's plat of Elgin. On the first trial of the cause the jury found defendant not guilty. Plaintiffs entered a motion for a new trial. That motion was by the court overruled, and plaintiffs then asked for a new trial, under the statute, which was granted to them. On the second trial the jury found for plaintiffs as to a part of the land described in the declaration. The motion made by defendant for a new trial was overruled, and the court rendered judgment, in the usual form, on the verdict.

The land described in the verdict,—the fee of which the jury found was in the plaintiffs,—is a triangular piece. The

description is given by metes and bounds, as follows: "Commencing at the south-west corner of lot six (6,) block twenty (20,) as shown in James T. Gifford's plat of Elgin;   *   *   * thence running westerly in a direct line with the south line of said lot, to Fox river; thence running southerly thirty-three (33) feet along the bank of said river, to the north line of Chicago street, said last line being sixty-seven (67) feet from the north line of the block of buildings on the south side of said street; thence running easterly in a direct line to the place of beginning, being the premises described by the letter 'A' on Pease's plat in evidence." It is seen, from the evidence, that the land embraced by the description contained in the verdict consists wholly of accretions either to Chicago street or to lot 6, and the contention is as to which do the accretions belong.

Concerning many of the facts in the case no controversy exists. No question is made that James T. Gifford owned the land east of the river covered by his plat of Elgin. His plat of the town was made and recorded on the 11th day of February, 1843. Lot 6, in block 20, is situated at the north-west corner of River and Chicago streets, as those streets are marked on the plat. Originally this lot was bounded on the east by River street, on the south by Chicago street, and west by Fox river. Nor is there any controversy that plaintiffs, through *mesne* conveyances, now own a part of lot 6, in block 20, that fronted on the river, as shown on the original plat of the town. It would seem that Chicago street, in Gifford's plat, runs east and west, and that River street runs parallel with the river. The course of the river at that point, at the date of the making of the original plat, was from the north slightly to the south-east, so that River street crossed Chicago street obliquely. There was a bridge across Fox river, at the time the town was laid out by Gifford, at the west end of Chicago street, and the plat in evidence shows the street approached to the water line. Since then, two or three new

bridges have been constructed, and in erecting each new bridge the abutments were placed farther west, on account of the accretions to the east bank of the river, so that now, according to some evidence in the case, the east bank of the river is over seventy feet west of the river margin in 1840. The land found by the verdict to belong to plaintiffs, as before observed, consists wholly of accretions, and lies south of the north line of Chicago street, if extended west in a direct line from the point where it originally touched the river bank, and north of a line projected west from the same point at right angles with what is claimed to have been the bank of the river when Gifford's plat was made, its river front being thirty-three feet. It will be noted, the verdict finds the south line of the parcel of land described is the north line of Chicago street. That is a line projected west from the south-west corner of lot 6, at right angles with the margin of the river, as it was thought to have been when Gifford's plat was made. It is this line that plaintiffs claim is the true north line of Chicago street, and if it can be maintained as the true north line of that street, then undoubtedly plaintiffs would own the accretions to their property north of that line. On the other hand, defendants insist the north line of Chicago street is the north line of that street, as it is indicated on the original plat, extended west in a direct line to the present river bank. If that theory of the case is correct, then the land in controversy would be accretions to Chicago street, and would belong to defendant.

It will be recollected the verdict states the south line of the land in controversy, which is also stated to be the north line of Chicago street, is sixty-seven feet from the north line of the buildings on the south side of the street, which, added to the frontage on the river bank, would make the street at the river bank one hundred feet wide, while the street, as originally laid out, is but sixty-six feet wide, and is only now that wide at the south-west corner of lot 6. An explanation of

this fact is given in the evidence. Defendant offered to prove it had bought a parcel of land on the south side of the street of about the size of the triangular piece claimed on the north side of the street, but was denied the privilege to make that proof. This was an important fact in the case. It was a reasonable explanation why Chicago street was wider at that point than to the east, as it had been originally established. It was error in the court not to admit the Raymond deed for the land defendant claimed to have bought of him on the south side of the street. It does, however, appear, the street has been deflected to the south from the south-west corner of lot 6, so as to make the access easier to the bridge over the river as it is now constructed. It appears, also, the street has been so graded and worked as to turn the travel slightly to the south in the direction of the bridge. Between the south line of the land in controversy and the north line of the buildings on the south side of the street is sixty-seven feet, which, after taking off the land claimed, the street, at the present river bank, is one foot wider than the street is, as originally platted, farther to the east. Without the explanation defendant offered to make, by giving the Raymond deed in evidence, that fact may have made the impression on the jury that as the street would still be one foot wider than the original street, it was all defendant could claim at that point, and if so, it must have been hurtful to the defence.

It is obvious, from what has gone before, this litigation arises out of the controversy as to what is the true north line of Chicago street west from the south-west corner of lot 6 to the river bank as it now is. On this branch of the case the court excluded evidence offered by defendant that was both important and competent. It was the pivotal point upon which the whole case turned, and everything that would tend to establish that fact ought to have been permitted to go to the jury. Defendant offered to prove the declarations of some of plaintiffs' grantors, since deceased, when in possession of

the land now owned by plaintiffs, as to the location, and as to what was the true north line of Chicago street on the south side of the land. It was proposed to prove they recognized the line now insisted upon by defendant, as the correct north line of Chicago street. That was material evidence, and it was serious error to reject it. The rule of law on this subject is said to be well settled, that declarations in disparagement of the title of the declarant in possession of lands, are admissible as original evidence. It is upon the principle that possession is *prima facie* evidence of seizin in fee, and as his declarations make most strongly against his own interest, they are therefore admissible. Mr. Greenleaf, in his work on Evidence, says no reason is perceived why every declaration accompanying the act of possession, if made in good faith, should not be received as part of the *res gestæ*, leaving its effect to be governed by the rules of evidence. 1 Greenleaf on Evidence, sec. 109.

The testimony offered might, perhaps, have been admitted on other well recognized principles; but be that as it may, the declarations of the parties in possession, offered to be proved in this case, were made in disparagement of their title, whatever it was, and under the strictest rule held by any of the cases upon this subject, such declarations were admissible, and the jury should have been allowed to hear that testimony, in connection with other evidence in the case.

In this connection it is proper to remark, the court ought to have permitted defendant to give in evidence what is called the plat of the assessor's subdivision of lot 6, in which plaintiff's property is situated. Plaintiffs' deeds refer to this plat made by the assessor, and the witness that gave the most important testimony for them, referred to it, and it was otherwise so closely allied to the matters in controversy, the jury should have been permitted to consider it for what it was worth.

There are a number of questions made on this record that go directly to the merits of the controversy, that perhaps

ought not now to be considered, since it is thought they were excluded from consideration by the instructions given for plaintiffs, and as to which, for that reason, there has been no finding by the jury. Many of the instructions given for plaintiffs state the same general doctrine, but it will afford an opportunity for an expression of the views entertained by this court, to consider only the first of the series. It is as follows:

"If the jury believe, from the evidence, that in 1843, when the plat of the city of Elgin was made by James T. Gifford, the south-west corner of lot six (6,) block twenty (20,) and the west end of the north line of Chicago street, was then marked out, on said plat, on the east side or bank of Fox river, and that since that time said east bank has been extended further west, and the river narrowed thereby, either by natural causes or physical means, then the south line of said lot six (6,) and the north line of said Chicago street, would, by law, be extended westerly at right angles with the then east shore of the river, to the center line of said stream, and that such right-angled line would be, and now is, the legal south line of said lot six (6) and the north line of said Chicago street, over said new or made land."

The objections that occur to this instruction are numerous, and some of which seem to be fatal. First, it assumes to state, as a matter of law, what line would be the "north line" of "Chicago street." That was the vital fact in the case. It is purely a question of fact, and should have been left to the determination of the jury. To state, as a matter of law, what is the "north line" in controversy, was equivalent to withdrawing the question of fact from the jury, which was error. Second, but whether this charge states correctly the rule of law most generally observed for ascertaining the rights of riparian owners, is not a matter of much consequence in this particular case. It perhaps would have been nearer accurate to have said, a line drawn at right angles with the middle thread of so much of the river as lies opposite the

shore line, instead of "at right angles with the then east shore of the river to the center line of said stream." It was a matter of contention between the parties whether the rule for ascertaining the rights of riparian owners, if correctly formulated, could have any application to the facts of the case. All the authorities concur in holding, special circumstances, in some cases, require a modification of the general rule on this subject. The rule, as stated by the court, admitted of no exception, and the jury were bound to regard it in all its strictness, no matter what circumstances may have been proved that would make a modification of the rule imperative. In this respect this and other instructions on the same subject were highly calculated to mislead the jury. Under the facts and circumstances proved, it was important to consider whether the rule as to the rights of riparian owners, attempted to be stated, should not be modified, and the court should have so advised the jury.

There is yet another, and perhaps still graver, objection to this instruction. It is, it adopts the theory of plaintiffs, that by law a certain line is the "north line" of Chicago street, and that being so, the jury could not do otherwise than find for plaintiffs. The effect was absolutely to take from the jury certain defences defendant was insisting upon, and which it had a right to have considered by the jury. One was, that defendant had been in the undisputed and actual possession of the land in controversy for more than twenty years, and therefore, by the statute, plaintiffs were cut off from any right of action to recover the same. Certain acts of dominion over the property by defendant were relied upon as showing possession for a longer time than the statutory period required to bar the right of entry by an adverse claimant. But whether that defence should prevail, is not a question to be now considered. The finding of the facts should be left for the jury.

Another defence insisted upon was practically excluded by the instructions given for plaintiffs. It is, that the land to

the center of the river, as it was when Gifford made his plat, was dedicated for the purposes of a highway, in a direct line with Chicago street, if extended west. It is conceded, Gifford owned the land on the east bank of the river, and, of course, his title extended to the center of the stream. The plat made by the owners shows Chicago street to the bank of the river, and then, spanning the river in a direct line with the street, are lines marked "bridge." This is certainly some evidence that he intended the street should extend to the center of the stream, or so far as he owned the soil. ...Exactly what the evidence on this branch of the case may prove, it is perhaps not proper now to determine. It is sufficient enough appears to make it proper for the jury to pass upon it, and the court should not have told the jury, as was done by this instruction, the case should be decided on another view of the case, thereby ignoring altogether this defence. The dedication of land to public use, by plat or otherwise, is a matter of intention. That Gifford, when he made his plat of the town, intended Chicago street should extend over his land to the center of the river, is so evident it can hardly be a matter of dispute. The plat shows the street comes to the river bank, and the lines marked "bridge," indicated unmistakably it should extend to the center of the stream, or at least so far as he could dedicate a highway. But how did he intend to dedicate it? Was it intended to be in a direct line with Chicago street, west, over the river, or did he anticipate there would be accretions to the east bank of the river, and in that event the dedication should be in the direction of a line extended west, drawn at right angles with the then east bank of the river? The latter would seem to be a most unreasonable conclusion, with nothing in the evidence, and very little in reason, in its support. Adopting this latter view, it would imply he must have anticipated the accretions that have since formed, and that the street would consequently deflect south, as Chicago street does not approach the river bank at right angles, as

originally laid out. All there is on the plat would seem to indicate the street should extend over the river in a direct line,—the lines marked to indicate a "bridge" are in a direct line with the street. But what was the intention of the owner when he made the plat of the town, and what he did do, are matters for submission to a jury.

Some of the instructions given by the court, both for plaintiffs and defendant, may state the law more accurately, but this one is so radically erroneous it may have misled the jury. Regarding it as a correct expression of the law, as the jury might well do, they could not do otherwise than find for plaintiffs, as they did. It gave a distinct theory, stated to be the law, upon which the case was to be decided, and that, of course, excluded effectually from the consideration of the jury all matters insisted upon as a defence to the action.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*