CLARA M. CRAMER, Respondent, *v.* MELANCHTHON W. PERINE, Appellant.

(Argued April 29, 1929; decided May 28, 1929.)

*J. Neil Mahoney* for appellant.   The division of lands as made is contrary to law and inequitable to the defendant.   (*Townsend* v. *Hoyt*, 51 N. Y. 656; *Jackson* v. *Diefendorf*, 1 Caines, 483; *Mann* v. *Pearson*, 2 Johns. 37; *Voorhees* v. *Burkhard*, 55 N. Y. 98; *Jeffries* v. *East Omaha Land Co.*, 134 U. S. 178; *Tarbell* v. *West*, 86 N. Y. 280; *Murray* v. *Ballou*, 1 Johns. Ch. 565; *Jackson* v. *Post*, 15 Wend. 588; *Thompson* v. *Simpson*, 128 N. Y. 270; *Sage* v. *Cartwright*, 9 N. Y. 49; *Thayer* v. *Finton*, 108 N. Y. 394.)   The general rule for division of accretions is not of rigid application and should be applied or modified according to the circumstances of the case.   (*Glover* v. *Shields*, 32 Barb. 324; *Hastings* v. *McDonough*, 43 N. Y. Supp. 628; *Jackson* v. *Freer*, 17 Johns. 29.)   The intent of the common grantor Dow as expressed in the respective conveyances of 1904 is controlling and the express language as set forth in both conveyances sustains the defendant's claim of title.   (*Matter of New York*, 212 N. Y. 325; *Halsey* v. *McCormack*, 92 N. Y. 463; *Starr* v. *Child*, 5 Denio, 599; *Babcock* v. *Utter,* 1 Abb. Ct. App. Dec. 27; *Kingman* v. *Sparrow*, 12 Barb. 201; *Child* v. *Starr*, 4 Hill, 369; *Thompson* v. *Simpson*, 128 N. Y. 270; *Sparrow* v. *Kingman*, 1 N. Y. 242; *Perkins* v. *Storrs*, 114 App. Div. 322; *Stoddart* v. *Weston*, 53 Hun, 634.)

*Elijah W. Holt* for respondent.   The decision of the trial court is a just and correct determination of the division of the accreted lands.   (*Calkins* v. *Hart*, 219 N. Y. 145; *People* v. *Woodruff*, 30 App. Div. 43; *Mulray* v.

*Norton,* 100 N. Y. 459; *Knickerbocker Co.* v. *Schultz,* 116 N. Y. 388.)

LEHMAN, J. In 1888 one William A. Umlauf was the owner of land in the city of Buffalo in a block bounded by Yale Place, Seneca Street, Princeton Place and Cazenovia Creek. He plotted these lands, and a map thereof was made in 1888 and filed in March, 1889, in the office of the county clerk of Erie County. Yale Place and Princeton Place are parallel streets, and all the lots, as plotted, front on one of these streets and extend to the middle line of the block, parallel to these streets. On February 3d, 1896, Umlauf conveyed to William Law " all that tract or parcel of land situate in the City of Buffalo, County of Erie and State of New York  *  *  * being subdivision lots numbers 86 and 87 of a tract of W. A. Umlauf according to a map and survey on file in the Erie County Clerk's Office under Cover 330." An examination of the map referred to in the deed shows that these lots fronted on Yale Place and extended to the middle of the block. Their northwest boundary was Cazenovia Creek. Thereafter, by deed dated March 27th, 1896, Umlauf conveyed to Peter Klas the lots fronting on Princeton Place which extend to Cazenovia Creek. Prior to 1904 William Law and Peter Klas respectively conveyed to John L. Dow the premises owned by each. Through these conveyances John L. Dow became the owner of all the lots between Yale Place and Princeton Place which lie along Cazenovia Creek.

Both the plaintiff and the defendants derive title to any lands which they may own from John L. Dow through mesne conveyances. By deed dated and recorded on January 22d, 1904, he conveyed to James J. Chown, the defendant's predecessor in title, " Subdivision lots numbers 86 and 87 of a tract of W. A. Umlauf according to a map and survey on file in the Erie County Clerk's Office under cover 330." The same description had been

used in the prior conveyances of the lots fronting on Yale Place and extending to Cazenovia Creek, in the deeds from Umlauf to Law and from Law to John L. Dow. It appears, however, that during the period between 1888, when the map and survey referred to in the deed was made, and January, 1904, when John L. Dow conveyed the lots to James J. Chown, the line of Cazenovia Creek had gradually changed, and considerable land had been added by accretion to the lots fronting on Cazenovia Creek. These accretions, of course, were not within the limits of lots 86 and 87 as defined on the map. The deed to Chown expressly provided that the lots were conveyed "together with all the right, title and interest that the party of the first part has in and to the Cazenovia Creek abutting on or adjoining the above described premises."

By deed dated and filed February 18th, 1904, Dow conveyed to Isidor Weber, plaintiff's predecessor in title, the lots along Cazenovia Creek fronting on Princeton Place and extending to the middle line of the block: "Beginning at a point in the westerly line of Princeton Place at a distance of eight hundred forty feet south of its intersection with the southerly line of Seneca Street, running thence southerly along said Princeton Place to the point of intersection of said Westerly line of Princeton Place and the waters of Cazenovia Creek, thence westerly and northwesterly down the stream of Cazenovia Creek *and along the bank thereof to a point where a line intersecting the point of beginning at right angles would intersect said bank of Cazenovia Creek,* thence easterly on a line at right angles with Princeton Place to the point of beginning."

Dow drew the description of the deed to plaintiff's predecessor in title, like the description of the deed to defendant's predecessor, from the deeds made by Umlauf and the deeds from his grantees to Dow. On the map filed by Umlauf in 1888, from which the description was

undoubtedly originally taken, the point on the bank of Cazenovia Creek " where a line intersecting the point of beginning at right angles would intersect said bank of Cazenovia Creek " is exactly at the middle line of the block between Yale Place and Princeton Place. The bank of the creek north of the middle line of the block was the boundary of the lots fronting on Yale Place, now owned by the defendant. The bank of the creek south of that line was the boundary of the lots fronting on Princeton Place, now owned by the plaintiff. In 1904 the accretions to the lots fronting on Cazenovia Creek had resulted in pushing the shore line of Cazenovia Creek a considerable distance to the west. Then the point on Cazenovia Creek where a line intersecting the point of beginning at right angles would intersect said bank of Cazenovia Creek lay north, not only of the middle line of the block, but north of the whole block. The description of the lots conveyed to the plaintiff's predecessor in title, as contained in that deed and as applied to the conditions existing at that time, would make the bank of Cazenovia Creek the boundary of the lots conveyed for its entire course through or alongside of the block between Princeton Place and Yale Place, if both were extended in a straight line. It would include land even outside of that block and it would completely exclude the grantee of the lots fronting on Yale Place from any access to the creek within that block though " adjoining or abutting " upon the lots previously conveyed to him.

The description in the deed made in February, 1904, by Dow, which was derived from the map made and filed many years before, does not fit conditions created by accretions during the years which had elapsed since the map was filed. The deed to defendant's predecessor in title was made before the deed to plaintiff's predecessor in title. The prior deed, as we have already pointed out, conveyed Dow's right, title and interest " in and to the Cazenovia Creek abutting on or adjoining " the lots described in

the deed. The title of the grantee under that deed has passed to the defendant. The grantor, Dow, could not change the effect of his conveyance by any subsequent grant to the plaintiff's predecessor in title. The only title which the subsequent grantee could acquire from Dow in land abutting on the creek or in the creek itself, was the title remaining in Dow after he had parted with all his title " in and to the Cazenovia Creek abutting on or adjoining " the lots north of the middle line of the block and extending to Yale Place, as shown on the filed map.

The defendant, who owns the lots on Yale Place, construing these words in the deed as intended to convey the grantor's title to the bank of the creek lying between Yale Place and the middle line of the block, has occupied all the land between his lots and the creek within those lines. The plaintiff, who has acquired title to the lands fronting on Princeton Place, has brought this action in ejectment to recover possession of that part of the lands occupied by the defendant which is included within the language of the description of the land conveyed by Dow to her predecessor in title.

It has been said that " in this state and in most of other jurisdictions where the common-law rule obtains, the rule has been established that as between adjoining owners on non-navigable streams and rivers, each owner takes title *ad medium filium aquæ,* in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center line of the stream." (*Calkins* v. *Hart,* 219 N. Y. 145.) Division of land formed by accretions along the bank in front of the premises of several adjoining proprietors has in many jurisdictions been made by the application of an analogous rule, in the absence of special circumstances which would make the application of such a rule inequitable. Under that rule, new land has been divided by drawing straight

lines from the division points on the old front at right angles to the bank or thread of the stream. (See Tiffany on Real Property [2d ed.], § 543; Farnham on Waters and Water Rights, § 841, and cases cited in these works.)

In this case the Appellate Division has divided the land in dispute by the application of a similar rule. In effect that court has held that when, in 1904, Dow conveyed to the defendant's predecessor in title " lots numbers 86 and 87 of a tract of W. A. Umlauf according to a map and survey on file in the Erie County Clerk's office under cover 330 * * * together with all the right, title and interest that the party of the first part has in and to the Cazenovia Creek abutting on or adjoining the above-described premises," the grantor intended to convey the lots shown on the map together with the subsequent accretions which would have adhered to those lots if they had been held in separate ownership. Accordingly, the court fixed as the boundary of the lots conveyed in 1904 to defendant's predecessor in title a line drawn at right angles from the bank of Cazenovia Creek, as shown on the filed map, at the point where the line of lots 86 and 87 intersected the bank of the creek, to the bank of the creek as it existed in 1904, when Dow conveyed the premises. The court held that the division of accretions during the period from 1904 and the date of the trial, must be made by the application of the same rule by extending the boundary line of the property conveyed in 1904 to defendant's predecessor in title, not in a straight line, but at right angles to the bank as it existed when the deed was made in 1904.

Land formed by accretion along the banks of a stream belongs to the riparian owners. The courts have attempted to devise rules for equitable division of such land between adjoining owners. In the often cited case of *Deerfield* v. *Arms* (17 Pick. 41) the court in the course of an exhaustive discussion of the subject stated: " The object is, to establish a rule of division among these

proprietors, which will do justice to each, where no positive rule is prescribed, and where we have no direct judicial decision to guide us." Different jurisdictions have adopted varying rules and have felt impelled at times to modify general rules to meet particular circumstances. In the instant case, this court must first determine the boundary of the lots conveyed to the defendant's predecessor in title by deed made in 1904, in accordance with the description contained in the deed. Then it must find the correct rule to apply in the division of the accretions made after Dow conveyed the premises in 1904. Here there may, perhaps, be need of balancing the advantages of the policy of a general, uniform rule to be applied under all, or at least most, conditions, and the policy of modifying general rules to do equity in the particular circumstances. No such problem is before us in regard to the division of accretions of land formed before 1904. Then Dow owned all the bank of Cazenovia Creek and all the land which had been formed by accretion to the lots plotted upon the filed map. He made the division of the new land, which had been formed after the map was filed. He had the right to convey that land in such proportions as he saw fit. From the language in the deed to the defendant's predecessor in title, we must determine what land the parties intended should pass. The rules devised by the courts for a division of land between adjoining owners, where the owners cannot make the division themselves, have no application where owners have themselves made the division.

In our opinion, the boundaries fixed by the Appellate Division for the land conveyed to defendant's predecessor in title by deed made in 1904, clearly do not conform to the intention of the parties as embodied in the deed. The lots conveyed were plotted, on the map referred to in the deed, with a frontage on Yale Place and with a rear line parallel to that street. It can hardly be doubted

that by the deed conveying these lots as shown on the map " together with all the right, title and interest that the party of the first part has in and to the Cazenovia Creek abutting on or adjoining the above-described premises," the grantor intended to convey the lots, shown on the map, to the bank of the creek. The bank had originally been the boundary of the lots. The parties intended that the bank should continue to be the boundary, regardless of change in the location of the water. To effectuate that intent fully, it would seem that the side boundaries should be extended till they meet the new bank in a straight line and not at a new angle. (Tiffany on Real Property, § 543.)

To test the correctness of our conclusions as to the intention of the parties, we may properly consider whether in this case the application of any other rule would produce an absurd or unjust result. If the side boundaries are not extended in a straight line, they must be extended in a line drawn at right angles to the bank as it existed on the map, in accordance with the decision of the Appellate Division. The side line so extended would meet the new bank of the stream, not at the middle line of the block between Yale Place and Princeton Place, but at or near the line of Yale Place if extended in a straight line. Clearly the parties could not reasonably have intended that the words " Cazenovia Creek abutting on or adjoining the above-described premises " referred to a portion of Cazenovia Creek, which might become separated from the above-described premises by an extension of Yale Place in a straight line, and which could be said to " abut on or adjoin the above-described premises " only if the established side boundaries of the said premises are extended at a new and sharp angle instead of in a straight line.

It is said that there is no evidence that Yale Place has been extended in a straight line, actually or constructively, or that the parties ever contemplated that it would be

so extended. We find in the record convincing evidence on that point. Yale Place and Princeton Place are, as we have pointed out, parallel streets bounding the block upon two sides. Both streets apparently extended about to the creek as shown on the map. If the parties intended and understood that Princeton Place should be regarded as extending to Cazenovia Creek, regardless of any change in the location of the creek, it is a fair inference, in the absence of evidence to the contrary, that they had the same understanding in regard to Yale Place. Undoubtedly, when Dow granted the lots fronting on Princeton Place to the plaintiff's predecessor in title, the parties to that deed must have so understood in regard to Princeton Place. The plaintiff's claim of title to the bank of Cazenovia Creek, as it existed in 1904, is based upon the language of that deed which describes the side line of the lots conveyed as running, from the point of beginning, " southerly along said Princeton Place to the point of intersection of said westerly line of Princeton Place and the waters of Cazenovia Creek." Clearly, the parties must have contemplated that at that time Princeton Place had been extended, actually or constructively, in a southerly direction from the point of beginning to Cazenovia Creek, wherever that might be located. Hardly less clear is the conclusion that when Dow conveyed to the defendant's predecessor in title his lots fronting on Yale Place extending to the middle line of the block, together with title to Cazenovia Creek *abutting on or adjoining these lots*, he intended that Yale Place and the middle line of the block should be the side boundaries of all land conveyed and these side boundaries should be extended till they met the new banks of Cazenovia Creek. He did not, and could not, thereafter convey to another any lands lying within these side boundaries so extended. The point on Cazenovia Creek as it existed in 1904, intersected by the middle line of the block, is the division point of the lands conveyed by Dow.

Intent of Dow, the common grantor of the premises owned by the defendant and the plaintiff, as shown in the language of the deeds made by him, determines the boundaries of the land which passed under the deeds. It does not itself determine how land which formed thereafter by accretion and the changed bank of the river must be divided. We have pointed out that general rules devised by the courts for apportionment upon an equitable basis must yield before the press of special circumstances. We do not now decide what general rule would ordinarily be applied in this State. We hold that under the special circumstances of this case the new bank of the river and the accretions formed by the change in the bank should be divided by extending the side boundary of the adjoining owners in a straight line.

That line runs parallel to the streets. It is hardly reasonable to suppose that these streets will not be extended, or will be extended in other than a straight line. The lots conveyed in 1904 fronted on these streets and were bounded in the rear by the middle line parallel to the streets. As land was formed from day to day by imperceptible accretion to these lots, each proprietor would naturally regard himself as the owner of the water front between his side boundaries. It would be inconvenient if, after the lapse of time, the lots intended to be bounded by streets and lines parallel to the streets should be bounded by other lines. There are few cases in the books dealing with the division of accretions to land in blocks bounded by city streets. Such cases as there are, show that these circumstances may present ground for departure from ordinary methods of allocation. In proper case, division may then be made by prolonging the lines of the streets and the side boundaries in a direction parallel to these streets. (See *City of Elgin* v. *Beckwith*, 119 Ill. 367; *Nirdlinger* v. *Stevens*, 262 Fed. Rep. 591; affd., on opinion below, 273 Fed. Rep. 1022;

revd., on other grounds but expressly approved in this regard, 262 U. S. 266, opinion by Mr. Justice HOLMES; *O'Donnell* v. *Kelsey*, 4 Sand. 202; affd., 10 N. Y. 412.) In this case, in our opinion, no other method of allocation could reasonably be applied.

It follows that the judgment of the Appellate Division and that entered upon the report of the referee should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.