THE BAY RIDGE DOCK Co., INC., and Another, Plaintiffs, *v.* UNITED DRY DOCKS, INC., Defendant.*

Supreme Court, Kings County, March 30, 1932.

---

*Herman Goldman,* for the plaintiffs.

*Rogers & Whitaker,* for the defendant.

BYRNE, EDWARD J., J. The Bay Ridge Dock Co., Inc., one of the plaintiffs herein, and the defendant are adjacent owners of certain lands under water which extend from the foot of Fifty seventh street and Fifty-eighth street, Brooklyn, some 1,400 feet outshore in New York bay. The plaintiffs' entire land under water is 315 feet wide. In the center third thereof it has heretofore constructed and now maintains a steamship pier approximately 100 feet in width and 1,400 feet in length. To the south of this pier its ownership of the land under water is 105 feet and to the north 110 feet in width. Defendant on its property maintains certain piers and dry docks. Between the plaintiffs' northern boundary line and the defendant's most southerly pier there is a waterway 100 feet in width, the land under which is owned by the defendant. Between the plaintiffs' and the defendant's most southerly pier, there is thus an open slip of 210 feet. The pier of the plaintiff Bay Ridge Dock Co., Inc., is operated by a lessee, the Northern Dock Company, also a party plaintiff herein, for the loading and discharge of certain ocean-going vessels. The entire slip between the two above-mentioned piers has been and is being utilized by the latter for such purpose.

Defendant now threatens to diminish the area of this waterway by mooring on its own property a floating dry dock of the proposed width of 95 feet. It is to restrain the erection of this structure that the plaintiffs pray herein for permanent injunctive relief.

It is the plaintiffs' contention that the mere ownership by the defendant of land under navigable waters does not give the latter the right to obstruct navigation by the erection of the proposed structure. It is maintained, moreover, that since such obstruction would constitute a nuisance, the plaintiffs may properly seek to prevent the same.

For every purpose which may be useful, convenient or necessary to the public, the State has the unquestionable right to make grants in fee or conditionally to lands under navigable waters for the beneficial use of the grantee or to promote commerce according to their terms. (*Appleby* v. *City of New York*, 271 U. S. 364; *Langdon* v. *Mayor*, 93 N. Y. 129; *People* v. *New York & S. I. Ferry Co.*, 68 id. 71; *Coxe* v. *State*, 144 id. 396; *Matter of Long Sault Development Co.*, 212 id. 1.) The State, however, cannot divest itself of the lands under navigable waters where the grant is unreasonable in area or extent. (*Illinois Cent. R. R. Co.* v. *Illinois*, 146 U. S. 387; *Matter of Long Sault Development Co., supra.*) Many of the cases relied upon by the plaintiffs fall within the latter category. Within the foregoing limitations such land may be vested in private ownership to the same extent as dry land (*Appleby* v. *City of N. Y., supra*), and the ownership thereof includes the right to construct a pier for the grantee's own use or for the use of the public, subject to such general rules and regulations as Congress or the State Legislature may prescribe. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74.)

Thus the character of the attributes in any case which attach to the private ownership of land under navigable waters is to be determined by the extent of the grant which has been made pursuant to proper legislative authorization. Sanction for the present grant has its origin in chapter 283 of the Laws of 1850, and that act and subsequent legislation, with respect to same, must be considered for the purpose of ascertaining the measure of the defendant's rights in the situation here involved. By the foregoing act the Legislature empowered the Commissioners of the Land Office to grant in perpetuity or otherwise the lands under waters " to promote the commerce of this State, or proper for the purpose of beneficial enjoyment of the same by the adjacent owner." Later, under the authority of chapter 121 of the Laws of 1855, a harbor commission was appointed and recommended bulkhead and pier head lines for the whole of New York harbor. These recommendations were accepted and put into effect by chapter 763 of the Laws

of 1857. Subsequently a second harbor commission was appointed but its recommendations left unaffected that part of the harbor which concerns the *locus in quo*.

Where a bulkhead line is established its purpose is to define the extent to which a grantee of the lands under water may solidly fill. (*Timpson* v. *Mayor*, 5 App. Div. 424.) Thus the legislative establishment of the bulkhead line effected a prohibition of solid filling outshore of such line and by implication permitted it within. The right in a grantee to thus make a solid filling is predicated upon the proposition that by the conveyance to him there has been in effect a relinquishment to this extent of the *jus publicum* (*Appleby* v. *City of New York, supra*), and where the grant properly permits of such solid filling, the fact that it may interfere with a public user cannot be urged as a basis for limiting or defeating such manner of enjoyment. (See *People* v. *Steeplechase Park Co.,* 218 N. Y. 459; *Appleby* v. *City of New York, supra*.) Navigation within the bulkhead line may continue after such conveyance only until such time as the grantee avails himself of the right to fill in his land. (*Consumers Coal & Ice Co.* v. *City of New York*, 181 App. Div. 388, at p. 393.) The Court of Appeals recently recognized that there has been a relinquishment of the *jus publicum* to this extent under the very statutes here applicable. (*Matter of City of New York* [*Upper New York Bay*], 246 N. Y. 1.)

Since the grant to the defendant includes the right to make a solid filling, which from its very nature presupposes a feature of permanency, *a fortiori* it includes the right to moor a floating dry dock. If there be no public right violated in the case of a solid filling, neither will such right be violated by the erection of the proposed structure.

Upon the trial plaintiffs adduced evidence to demonstrate that the entire width of the waterway should remain free from any permanent obstruction and maintained that the mooring of the defendant's proposed dry dock would seriously impair the expeditious docking and undocking of the vessels arriving at the plaintiffs' pier. The plaintiffs, however, do not deny that they can tie a ship to the outshore end of the pier. Nor do they deny that by removing a ship which is at the outshore end, another ship, with favoring winds and tide, may be placed inshore, and then the first ship moored again to the place where it had been originally. It is, therefore, not because of any threatened destruction of all access to their pier which cause plaintiffs herein to complain. It is rather due to the allegedly interminable delays and the expense which will be incidental in the docking of vessels. It is thus plaintiffs' contention that the entire slip, both over the 110 feet of their own land and the

100 feet of the defendant's land, must be left open so that vessels may more readily be warped along and moored to the side of their pier. To uphold the plaintiffs' theory is to decide that the defendant's ownership of its lands under water is to be limited and made subservient to the plaintiffs' purposes. A destruction of one party's right of property, or a limitation of its use, however, certainly cannot alone be justified upon the mere convenience of another. Mr. Justice CROPSEY, in dealing with a similar situation, has pointed out: " I see no reason why, in the absence of a statute, the one who builds a pier first should acquire greater rights than those who might build later. Each owner may build as and when he pleases." (*Fairchild* v. *Union Ferry Co.*, 121 Misc. 513; affd., without opinion, 212 App. Div. 823; 240 N. Y. 666.)

In the present case a regulatory statute requires that the distance between piers be 100 feet. To this extent the plaintiffs are protected in an access to their pier. Such right of access cannot be enlarged for the benefit of the plaintiffs by the destruction of equal rights conferred upon the defendant. A granting of the relief here sought, however, would effect that very result. As further stated in the *Fairchild* case, " So long as an adjoining owner has not built so as to interfere with the use of a side of a pier already constructed, its owner may doubtless use it for mooring vessels, but he does not thereby acquire a right to insist that that open space of water shall remain. * * * He has no right, nor has the public, to prevent the abutting upland owner from erecting a pier in front of any part of his property, and if the latter does so, the former has no claim for damages."

A contrary rule would give the riparian owner who might first erect a pier the power to prevent adjacent owners from exercising their rights, by keeping the water clear for access to the sides of his pier; or limit such rights by preventing the adjacent proprietors from making piers extending any further into the stream than the first erected. (*Jenks* v. *Miller*, 14 App. Div. 474, at p. 481; *Appleby* v. *City of New York, supra*, at p. 399.)

Judgment for the defendant. Settle findings on notice.