Hugh S. Coyle, J.
This is an action by the plaintiff yacht club, a membership corporation, to enjoin the proprietor of a commercial marina boat yard, known as Lion’s Boat Yard, from use of a floating dock with pilings and for removal of the same upon the grounds that the same exists in contravention of the Zoning Ordinance of the City of New Rochelle and that the maintenance thereof by defendant is a trespass upon an area covered by the riparian rights of the plaintiff.
For many years the parties have owned or occupied adjoining upland parcels bounded on the south by a navigable arm of Long Island Sound. The yacht club parcel adjoins the boat yard on the east. The off-shore land in front of both parcels is owned by the State and the entire area is within the city limits of New Rochelle.
For many years and prior to an amendment in 1959 to the Zoning Ordinance of the City of New Rochelle hereinafter mentioned, the yacht club maintained a dock or docks along a southerly projection of its westerly property line running out from its upland property into the water and providing approximately 110 lineal feet of usable wharfage space along its westerly side. Plaintiff’s structure was erected and is maintained under a permit issued to the plaintiff in 1937 by the Corps of Engineers of the United States Army, the official agency having charge of construction in navigable channels in the area.
The use of defendant’s land as a marina and boat yard antedated the adoption of any zoning ordinance by the City of New Rochelle. In 1956 the zoning ordinance of the city was amended to proscribe the construction of further docks, wharves and any “ similar structure ” without first obtaining a special use permit from the Zoning Board uf Appeals. By further amendment, in 1959, all off-shore land within the geographical limits of the city was marked and classified into districts upon the zoning map *143 and was thereby subjected to the coverage of the ordinance and the underwater area in front of the upland parcels of the parties to this action was designated upon the map as being in a residence zone (R-1A). In such a zone the operation of a commercial enterprise, such as defendant’s boat yard, is proscribed, but the defendant has the right to continue to use his land for a boat yard as a nonconforming use.
Immediately prior to the commencement of this action, defendant had substantially constructed a floating dock of approximately the same length as the plaintiff’s which he moved alongside the prolongation into the water of the boundary line between the upland properties of the parties. The new floats or docks were moored by pilings and prevented the use by Huguenot of the westerly side of its dock or docks, which had been erected many years before.
The defendant constructed his floats and pilings without obtaining any permit or sanction from any municipal authority. He relied upon a permit issued by the Corps of Engineers of the United States Army in 1962 allowing the installation at the location where defendant’s structures were placed, and a prior ruling of the Corporation Counsel of the city, made in 1950, that the building of a boat shelter on defendant’s upland as a part of his boat yard was not a prohibited extension or enlargement of a nonconforming use since such a boat shelter was an incident to the use of the property as a boat yard which was permitted as a nonconforming use. Further reliance was placed upon a letter of the city to the Army Corps of Engineers in connection with an application by defendant for a permit to do the dredging which was necessary in connection with the construction of defendant’s new structures, in which the city stated that it had no objection to the issuance of the permit. Defendant’s attorneys advised him that he had the right to build the floats with pilings without first obtaining either a permit from the City of New Rochelle or a grant of lands under water from the State of New York.
In a written decision dated July 15, 1963, this court granted a motion of the plaintiff for a temporary injunction to the extent of directing the defendant to remove his float and pilings unless, during the pendency of this action, the defendant provided the plaintiff with the use of 110 feet of dock space and with other conditions as set forth in an order dated July 18, 1963. The ground for the decision was that the plaintiff had shown special damage from defendant’s violation of the Zoning Ordinance of the city.
*144 However, defendant applied to the Zoning Board of Appeals of the City of New Rochelle, and during the continuance of the trial of this action and on November 26, 1963, after a public hearing, the board issued a decision which, in effect, permitted the defendant to use his floats and pilings and directed the issuance of any required permit in connection with such use. Following the determination by the Zoning Board of Appeals, plaintiff commenced a proceeding pursuant to article 78 of the Civil Practice Law and Rules to review the determination by the board. On the trial of this action the return of the City of New Rochelle in the article 78 proceeding, all exhibits annexed thereto and all exhibits submitted to the court were marked in evidence.
Simultaneously with the issuance of the decision in this action, the court is issuing a decision in the article 78 proceeding confirming the determination of the board and dismissing the petition therein.
In view of the determination by the Board of Zoning Appeals, which has been confirmed in the court’s decision in the article 78 proceeding, there no longer exists any violation of the Zoning Ordinance of the city upon which plaintiff can base its action for an injunction. In fact, on February 28, 1964, counsel for the plaintiff conceded during the trial of this action that ‘ ‘ since my action is based on a zoning violation which has been temporarily cured by variance * * * the determination of the Article 78 proceeding will determine everything that is involved in this case.”
However, in its brief, counsel for the plaintiff urges that the injunction should issue not only upon the ground that defendant’s floats exist in contravention of the Zoning Ordinance, but also upon the ground that the maintenance thereof by defendant is a trespass upon the area covered by the riparian rights of the plaintiff. This claim is based upon two contentions of the plaintiff, i.e., (1) that the property boundary line between the land under water of the parties is not the upland boundary line extended, but a line drawn at right angles from a point where the westerly end of the seawall in front of plaintiff’s property joins the easterly end of the seawall in front of defendant’s property, which would produce a partial trespass, and (2) that since the westerly side of the docks of plaintiff have been used for many years by the plaintiff, the cutting off of access to the westerly side of the docks by the defendant is a violation of the riparian rights of the plaintiff. The court is convinced that on the basis of decided law both of these contentions are without merit and that they should be rejected.
*145 Turning first to the proper boundary line, it has long been established as the law of this State that the settlement of the actual boundary line of land under water between conterminous proprietors is a question of much difficulty, that there is no general rule which is applied in all cases, and that the proper boundary line has to be determined by the facts in each case. It has also been firmly established that where adjoining property owners have long acquiesced in establishing the boundary line as to their land under water as being their upland property line extended to the bulkhead line, the proper boundary line is the line established by the parties. (O’Donnell v. Kelsey, 10 N. Y. 412, affg. 4 Sandf. 202; Cramer v. Perine, 251 N. Y. 177, 188-189.)
In O’Donnell v. Kelsey, the Court of Appeals quoted from the decision of Mason, J., below, in part, as follows (pp. 413-414):
“ ‘ The settlement of the actual boundary between conterminous proprietors, in such cases, is, as we have seen, a question of much difficulty; and a mode of division which under some circumstances, would be perfectly fair and equitable, would, under other circumstances, be directly the reverse.
“ ‘ In this point of view, the practical location by the proprietors themselves of their respective boundaries is entitled to great weight; for it cannot be supposed, that they will, generally, agree upon a principal of division, which would be unfair or unjust to any of them; and a mode of division generally adopted, no single individual of them ought to be allowed causelessly to disturb.
“ ‘ Now, here, the proprietors, generally, have settled their boundaries, so as to make them conform to the direction of the streets — a mode which manifestly has, in this present instance, very great advantages over any other. ’ ’ ’
The Court of Appeals said (p. 419):
1 ‘ The case, therefore, seems to me, that of two adjoining proprietors who settle by agreement among themselves, the dividing line of their respective lands, and for some time act accordingly; and in such case, neither party is at liberty to depart from the arrangement. It is upon the doctrine of acquiescence in the dividing line between adjoining estates, and not upon that of estoppel or adverse possession, that, I think, the defendant is barred of his present claim, and it seems to me, that his acquiescence may well be presumed, from his various acts as detailed in this case.”
The evidence produced at the trial is conclusive that in this case the adjoining property owners have established as long ago *146 as 1930 their underwater boundary as being their upland property line extended to the bulkhead line and, therefore, the principle of the O’Donnell case (sufra) should be followed here. In an application by the plaintiff, dated October 20, 1930, to the Army Corps of Engineers for a dredging permit in order to dredge the land under water in front of its upland, plaintiff shows the boundary line of its land under water to be the projection of its upland property line. A similar application by defendant’s father, dated November 10, 1930, likewise shows the eastern boundary of defendant’s land under water to be the projection of his upland property line. It also appears from other maps and applications of both parties that from 1930 until service of the complaint in this action, both the plaintiff and the defendant always treated the proper boundary line between their respective lands under water to be the extension of their upland boundary line.
In 1931, upon application of the plaintiff and the defendant’s father, land grants were made by the State to the applicants of a small portion of the land under water in front of their respective parcels in order that the parties could erect a seawall beyond the mean high-water line in front of their respective properties. The map in connection with these applications, as well as the land grant deed, clearly indicates that the boundary line between the land under water of the properties of the plaintiff and defendant is the upland boundary line extended for a distance of 30 feet. Thus, there is an administrative determination made by the State board having jurisdiction that as between the parties to this action, the proper boundary line between their respective lands under water is their upland property line extended.
In addition, defendant has applied to the Bureau of Surplus Beal Property of the State of New York for a grant of the lands under water in front of his upland property. A letter dated February 14,1963, from the chief of such bureau to the engineer of defendant states that defendant would have to be limited to the area in front of his property — more specifically, to the area confined between his northeasterly and southwesterly boundary lines extended.
Since the court finds that the proper boundary line between the land under water of the parties is their upland boundary line extended, there is no basis for the claim of the plaintiff that there has been a trespass by defendant upon the lands under water rights of the plaintiff.
Turning now to the other argument presented by plaintiff that its riparian rights have been invaded, it is well-established *147 law that an upland owner, even without a land grant from the State, as an incident to his ownership of the upland and of his right of access to navigable waters has the right to construct floats, piers and wharves for the use of himself and the public. (Hinkley v. State of New York, 234 N. Y. 309, 317-318; Town of Brookhaven v. Smith, 188 N. Y. 74, 80-82; Rumsey v. N. Y. & N. E. R. R. Co., 133 N. Y. 79; Thousand Is. Steamboat Co. v. Visger, 179 N. Y. 206; Saunders v. N. Y. C. & H. R. R. R. Co., 144 N. Y. 75, 87-88.)
In Hinkley v. State of New York, the court held that title by adverse possession could not be obtained by the building of piers and bulkheads in front of the upland owner’s property where there is no land grant from the State and said: (pp. 317-318) “ Matthew Yassar as riparian owner had certain rights which involved the land under water. These were given to him by law and may be considered as a permission or license from the people of the state of New York. The right of a riparian owner was fully considered in Town of Brookhaven v. Smith (188 N. Y. 74, 84) and in Thousand Island Steamboat Co. v. Visger (179 N. Y. 206). He has the right of access to the channel or the navigable part of the river for navigation, fishing and such other uses as commonly belong to riparian ownership, the right to make a landing wharf or pier, for his own use, or for that of the public, with the right of passage to and from the same with reasonable safety and convenience. A pier may be constructed without a grant from the state of the land under water upon which it rests.”
The law is also well established in the New York law of riparian rights that the prior construction and long use of the Yacht Club dock gives no right to continue the use of the west side of the dock or to prevent an adjoining owner, such as Lion, from making full use of his riparian rights by the construction of a float on any part of the lands under water in front of his upland. (Fairchild v. Union Ferry Co., 121 Misc. 513, affd. 212 App. Div. 823, affd. 240 N. Y. 666 ; Jenks v. Miller, 14 App. Div. 474; People ex rel. Cornwall v. Woodruff, 30 App. Div. 43, affd. on opn. below 157 N. Y. 709; People v. Mould, 37 App. Div. 35; Bay Ridge Dock Co. v. United Dry Docks, 146 Misc. 404, 407-408; People ex rel. Gratwick v. Commissioners of Land Office, 202 App. Div. 240; Consumers Goal & Ice Co. v. City of New York, 181 App. Div. 388.)
In the first-cited case, Fairchild v. Union Ferry Co., the court held that the plaintiff had no action against an adjoining owner whose ferry rack prevented the mooring of boats and that the *148 upland owner could build a pier covering Ms entire land under water in front of Ms property, saying (p. 516): “ such pier may be of any width. The same right, in the absence of statute, is possessed by each upland owner and, therefore, adjoining owners could each build piers, and each could build Ms pier upon the line of his property and cover the whole width of his property if he wished. Under the plaintiffs ’ contention the one who built first and who built upon the line of his land, or so close to it that there would not be room for the mooring of vessels along the side of the pier and in front of his upland would obtain a right to prevent his adjoining owner from erecting a pier unless he built it far enough from the pier already constructed to permit of a sufficient space for docMng vessels between them. I see no reason why, in the absence of statute, the one who builds a pier first should acquire greater rights than those who might build later. Each owner may build as and when he pleases.
Again, in the concurring opinion of Cullex, J., in Jenks v. Miller (14 App. Div. 474, 481, supra) the court said:
“ The riparian right of access, so far as it is a property right incident to the ownership of the upland, is strictly a right of access by the front. It is said in G-ould on Waters (§ 153): The right of unobstructed access is also limited to the front of the land, and does not include the right, if the riparian owner fills out his entire frontage, to have the docks or water spaces on either side kept open in order that he may have access to the sides of his wharf.’ In Gray v. Bartlett (20 Pick. [Mass.] 186), it was held that the erection of a pier did not draw after it the exclusive right to use the open space adjoining as a dock for vessels at the wharf to lie in. In Bond v. Wool (107 N. C. 139) it was held that the defendant had a right to build a wharf or landing on his own water front though it cut off the side approach to the plaintiff’s landing. * * *
‘ ‘ A contrary rule would give the riparian owner who might first erect a pier the power to prevent adjacent owners exercising their rights, by keeping the water clear for access to the sides of his pier, or limit such rights by preventing the adjacent proprietors from making piers extending any further into the stream than that first erected.” (Emphasis added.)
In People ex rel. Gratwick v. Commissioners of Land Office (202 App. Div. 240, 242, supra) the court said: “ This right of access in the riparian owner is, however, a right of access in front of Ms premises only and does not extend to the frontage of adjoining uplands; he has no individual or personal right or easement in the waters in front of adjoining uplands
*149 Accordingly, the two contentions of the plaintiff based on the law of riparian rights and the law of land under water are without merit and must be rejected.
The court, therefore, finds for the defendant. The court also finds that in constructing his floats with pilings defendant has properly exercised his riparian rights to the lands under water in front of his upland property.